UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE:  MIROSLAW HOLOWATY and MARIA HOLOWATA, **SCHMETTERER** DEBTORS. | :  BANKR.NO. 05-42343 <br> :  CHAPTER 7 <br> :  JUDGE: JACK B. <br> : <br> : <br> : |

| | |
|---|---|
| AMERICAN EXPRESS BANK, FSB, PLAINTIFF, v. MARIA HOLOWATA, DEFENDANT. | : <br> :  ADV.NO. 06-00756 <br> : <br> : <br> : <br> : <br> : <br> : |

## ~~PROPOSED~~ FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT

THIS PROCEEDING is before the Court on a Complaint to Determine Dischargeability of consumer debt pursuant to 11 U.S.C. §523(a)(2)(A) and 11 U.S.C. §523(a)(2)(C). The Defendant failed to answer and the Plaintiff moved for entry of default judgment under Rule 55 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Rule 7055 of the Federal Rules of Bankruptcy Procedure. Based upon the evidence before the Court, the Court enters the following Findings of Fact and Conclusions of Law:

## **FINDINGS OF FACT**

1. On September 30, 2005, the Defendant and her co-filing spouse filed a joint voluntary petition for relief under Chapter 7 of the Bankruptcy Code.

2. American Express Bank, FSB ("American Express" or the "Plaintiff") is the holder of an unsecured claim against Maria Holowata (the "Defendant") arising from her use of account number ****-******-*2003 (the "Account").

3. On March 16, 2006, American Express timely filed a Complaint to Determine Dischargeability of Debt (the "Complaint") pursuant to 11 U.S.C. §523(a)(2)(A) and 11 U.S.C. §523(a)(2)(C) alleging that the Defendant incurred pre-petition debt through false pretenses, a false representation and/or actual fraud.

4. The Complaint and Affidavit submitted by the Plaintiff allege the following activity with regard to the Account:

5. American Express opened the Account for the Defendant in February of 2004 after review of an application and credit check of the Defendant by American Express.

6. The terms and conditions of the account agreement between the Defendant and American Express call for the payment of reasonable attorney's fees and costs expended by American Express in the collection of the Account.

7. The balance of the Account as of the date of the filing of the Chapter 7 petition was $18,216.96.

8. Between August 9, 2005 and September 20, 2005, the Defendant used her American Express Account in fifty-five (55) transactions charging $8,130.03 for goods and/or services on the Account.

9.  The transactions referenced above include ten (10) charges to Value City totaling $943.33 for goods and services, four (4) charges to BBY/MHT totaling $2,676.14 for electronics, a charge to Comp USA in the amount of $326.24, a charge to TJ Maxx in the amount of $317.25, three (3) charges to Kohls totaling $310.04, a charge to Kay Shoes in the amount of $196.20, a charge to Sports Authority in the amount of $179.03, and a charge to Syms in the amount of $192.69.

10. All of the transactions referenced above were incurred on or within sixty (60) days before the filing of the Defendant's bankruptcy petition and are therefore presumed nondischargeable pursuant to 11 U.S.C. §523(a)(2)(C).

11. The terms and conditions of the agreement between the Defendant and American Express governing the use of the Account call for minimum payment on the Account upon receipt of the monthly billing statements.

12. The Defendant did not make any payments toward the aforementioned transactions.

13. After incurring the aforementioned transactions and prior to the filing of the Defendant's Bankruptcy Petition, the Account accrued finance charges totaling $146.22.

14. Prior to incurring the charges stated in the Complaint, the Account was in good standing.

15. Aside from the billing periods during which the charges at issue were made (August of 2005 and September of 2005), the highest monthly activity in the year 2005 prior to bankruptcy was $2,623.39. Thus, the aforementioned transactions are significantly out of pattern with the prior history of the Account and represent a sudden change in the Defendant's buying habits.

## FINANCIAL CONDITION OF THE DEFENDANT

16. The Defendant's Schedules reflect insufficient income and assets from which she could have reasonably expected to repay American Express, that is remit a payment of $261.00 by September 29, 2005 as required by the September 9, 2005 statement and submit $631.00 that would have been due as of the next statement date.

17. According to Schedule F, the Defendant and her co-filing spouse have unsecured, nonpriority debt totaling $33,666.00, of which $33,316.00 appears to be credit/charge card debt.

18. According to Schedule I, the Defendant and her co-filing spouse have current monthly income of $1,178.00, all of which comes from unemployment.

19. According to Schedule J, the Defendant and her co-filing spouse have current monthly expenses of $1,871.23, exclusive of payments towards credit/charge card debt.

20. The Defendant's Statement of Financial Affairs lists income of $68,205.00 in 2003, $68,142.00 in 2004, and $13,232.00 in 2005 (year to date of filing).

21. Despite her overall financial condition, the Defendant charged over $8,000.00 in less than a month and a half purchasing high end goods and services including electronics, computers, and apparel. All of these charges were incurred within the presumption period.

22. The aforementioned transactions were significantly out of pattern with the prior history of the Account and represent a sudden change in the Defendant's buying habits.

23. The Defendant failed to make a single payment towards these transactions.

Case 06-00756    Doc 16    Filed 06/22/06    Entered 06/23/06 11:45:14    Desc Main
Document      Page 5 of 12

06-00756:12.6:Motion for Default Judgment:Exhibit Findings of Fact and Conclusions of Law Entered: 6/12/2006 2:56:21 PM by:David L Freidberg Page 5 of 12

24.     The Defendant filed for bankruptcy relief and American Express filed the instant Adversary Proceeding.

25.     American Express effectuated proper service of its Complaint upon the Defendant.

26.     The Defendant failed to file an Answer or other responsive pleading, has not requested an extension of time to do so, and has not presented a defense or otherwise appeared in this matter.

27.     The Defendant is not an infant, mentally incompetent nor in the military service of the United States.

28.     For the reasons set forth below, American Express has demonstrated a prima facie case under 11 U.S.C. §523(a)(2)(A) and 11 U.S.C. §523(a)(2)(C) and is entitled to judgment.

## **CONCLUSIONS OF LAW**

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §157(a), (b)(1), (b)(2)(I), §1334(b) and 11 U.S.C. §523(c). It is a core proceeding.

2.     Default judgments in bankruptcy proceedings are governed by Rule 55(b) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Rule 7055 of the Federal Rules of Bankruptcy Procedure.

3.     Under Rule 55(b), the court has discretion to "conduct such hearings . . . as it deems necessary and proper" to determine whether a default judgment should be entered.

4.     "Although, well-plead facts in the complaint are generally taken as true, the defendant does not by default admit conclusions of law." In re Paul, 266 B.R. 686, 693 (Bankr. N.D. Ill. 2001).

5.     Thus, the court will enter default judgment where the evidence establishes a prima facie claim that the debt in question is excepted from discharge under 11 U.S.C. §523(a)(2)(A).

6.     11 U.S.C. Section 523(a)(2)(A) provides as follows:

(a)    A discharge under Section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt -

> (2)    for money, property, services, or an extension, renewal, or refinancing of credit, to the extend obtained by -
>
>> (A)    false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

7. In order to prevail under §523(a), a creditor must prove each element of fraud by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991).

8. In order to except a debt from discharge under §523(a)(2)(A), a creditor must establish the following elements: (1) the debtor obtained the money or credit through representations that he either knew to be false, or made with suck reckless disregard for the truth as to constitute willful misrepresentations; (2) the debtor possessed an actual intent to deceive; and (3) the creditor justifiably relied on the misrepresentations to its detriment. Mayer v. Spanel Int'l Ltd., 51 F.3d 670, 673 (7th Cir.), cert. denied, 516 U.S. 1008, 116 S. Ct. 563 (1995).

9. Some courts have held that use of a credit card constitutes an implied representation of both intent and ability to repay the resulting debt. In re Berz, 173 B.R. 159, 162 (Bankr. N.D. Ill. 1994). More recently, courts have revised this theory such that the representation implied to the creditor is that the debtor has only the intent to repay. Mercantile Bank v. Canovas, 237 B.R. 423, 428 (Bankr. N.D. Ill. 1998). However, lack of ability to repay is one factor a court may consider in determining a debtor's intent. Id.

10. The determination of whether the debtor had the requisite intent to defraud is a factual issue to be determined upon review of all relevant circumstances surrounding a particular case. In re Paul, 266 B.R. at 694; In re Berz, 173 B.R. at 162.

11. Courts must look at the totality of circumstances to determine whether the debtor's conduct was calculated to deceive or cheat the creditor. Mercantile Bank v. Canovas, 237 B.R. at 428.

12. A review of the commonly cited list of factors is helpful in determining whether a debtor had the intent to deceive when he made the charges. These factors include:

1. the length of time between making the charges and the filing for bankruptcy;

2. whether an attorney had been consulted concerning filing for bankruptcy before the charges were made;

3. the number of charges made;

4. the amount of the charges;

5. the financial condition of the debtor at the time the charges were made;

6. whether the charges were above the credit limit of the account;

7. whether the debtor make multiple charges in the same day;

8. whether the debtor was employed;

9. the financial sophistication of the debtor;

10. whether there was a sudden change in the debtor's buying habits; and

11. whether the purchases were for luxuries or necessities.

Berz, at 163; See also In re Dougherty, 84 B. R. 653 (9th Cir. BAP 1988).

13. In the present case, a review of the evidence presented proves that the Defendant intended to defraud American Express at the time she made the charges at issue or she acted with reckless disregard for the truth as to constitute willfulness.

14. Over the course of only forty-two (42) days, the Defendant made a total of fifty-five (55) charges totaling $8,130.03 on her American Express Account.

15. The Defendant charged an average of $193.57 per day during this time

period.

16. These charges included $2,676.14 for electronics, $326.24 at Comp USA, and several charges for high end apparel.

17. While the precise nature of what was purchased may not be clear from the account statements provided, the amount of the charges and the fact that the charges were made at high-end retailers lead this Court to conclude that many of the charges were incurred for luxury items, not reasonably necessary for the maintenance and support of the Defendant or his dependents, if any. See In re Tabar, 220 B.R. 701, 704 (Bankr. M.D. Fla. 1998)(purchases are luxury goods or services depending upon whether the item purchased served any significant family function and whether the transactions evidenced some fiscal irresponsibility); In re Ellingsworth, 212 B.R. 326 (Bankr. W.D. Mo. 1997)(the court can decide whether purchases are luxury goods based upon the account statements and nature of the items purchased).

18. Multiple charges were made on the same day on several occasions.

19. The aforementioned transactions were significantly out of pattern with the prior history of the Account and represent a sudden change in the Defendant's buying habits. The sudden change in Defendant's buying habits is indicative of a pattern of "loading up." The Court in In re Anastas, 94 F.3d 1280, 1285 (9th Cir. 1996), specifically refers to loading up as one factor in determining whether the cardholder lacked the intent to repay.

20. The Defendant made no payments whatsoever towards the transactions.

21. Another indicator of fraud is found in Schedule F of the Defendant's

Bankruptcy Petition. At the time the Defendant filed for bankruptcy in September of 2005, she had $33,666.00 in unsecured nonpriority debt, most of which was credit card debt.

22. At the time these charges were made, the Defendant did not have the ability to make the required payments under the terms of the account agreement the Defendant had a monthly deficit of $693.23. The Defendant also had substantial unsecured debt as described previously. Clearly, she recognized, or should have recognized, the seriousness of her financial condition and the obvious results of her actions.

23. The Defendant filed for bankruptcy only ten (10) days after her last charge and all of the charges were made within sixty (60) days before the filing.

24. Pursuant to 11 U.S.C. §523(a)(2)(C), "consumer debts owed to a single creditor and aggregating more that $1,225.00 for "luxury goods or services' incurred by an individual debtor on or within 60 days before the order for relief . . .are presumed to be nondischargeable."[1] As defined by this section, luxury goods or services "do not include goods or services reasonable acquired for the support or maintenance of the debtor or a dependent of the debtor."

In the instant case, Defendant incurred all of the charges, totaling $8,138.03, within sixty (60) days before the filing of her bankruptcy petition. The charges include $2,676.40 at BBY/MHT for electronics and large purchases at retailers such as Comp USA, Value City, Kay Shoes, Sports Authority and Syms. These items appear to be for luxury items, not reasonably necessary for her maintenance and support. Accordingly,

---

[1] The Defendant filed bankruptcy on September 30, 2005. As such, this case is governed by the Bankruptcy Code as it was prior to the Bankruptcy Abuse Prevention and Consumer Protectiion Act of 2005.

Case 06-00756 Doc 16 Filed 06/22/06 Entered 06/23/06 11:45:14 Desc Main Document Page 11 of 12

06-00756:12.6:Motion for Default Judgment:Exhibit Findings of Fact and Conclusions of Law Entered: 6/12/2006 2:56:21 PM by:David L Freidberg Page 11 of 12

the debt owed to American Express is nondischargeable pursuant to 11 U.S.C. §523(a)(2)(C).

25. The facts above therefore indicate the Defendant's lack of intent to repay Plaintiff. "Because fraud lurks in the shadows, it must usually be brought to light by consideration of circumstantial evidence." In re Ettell, 188 F.3d 1141, 1145 (9th Cir. 1999).

26. American Express was damaged as a result of its reliance that the Defendant would honor her obligation and representations that the charges would be paid. The Supreme Court in Field v. Mans, 516 U.S. 59, 116 S. Ct. 437, 133 L. Ed. 2d 351 (1995) held that section 523(a)(2)(A) requires that a creditor prove that they "justifiably relied" on a false representation.

27. In determining whether a creditor's reliance is justifiable, the court must look to "the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case." Id. at 444 [quoting Restatement (Second) of Torts §545A cmt. b (1976)]. The justifiable reliance standard requires only that a creditor not "blindly [rely] upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." Field v. Mans, 516 U.S. at 71. This standard does not impose a duty to investigate unless the falsity of the representation is easily detectable. Id. at 70-72. American Express' reliance was justified.

28. The Defendant was a cardmember in good standing prior to making the charges at issue. The Account was not in default. Furthermore, there were no "red flags" evident during the time period of charging activity that would have given American

Express reason to believe that the Defendant would not honor her agreement to repay all charges. The Defendant ran up the balance of the Account in a short period of time and bankruptcy just days after the last charge.

29. American Express, therefore, had no reason to question the Defendant's promise to repay. As the proximate result of the Defendant's false representations, American Express sustained damages of $8,276.25, plus interest, attorney's fees and costs.

## CONCLUSION

30. Accordingly, based on the objective factors analyzed above, any subjective intent on the part of the Defendant to repay her debt was unfounded. The Defendant profoundly fooled herself if she thought otherwise. The facts and circumstances show that the Defendant incurred debt at a time when she knew or should have known that she would be unable to repay it. Thus, under 11 U.S.C. §523(a)(2)(A) and 11 U.S.C. §523(a)(2)(C), the debt owed to American Express is nondischargeable as it was incurred through false pretenses, a false representation, or actual fraud.

31. American Express has demonstrated a prima facie basis for relief under §523(a)(2)(A) and §523(a)(2)(C) and is entitled to Default Judgment in the amount of $8,276.25, plus interest, attorney's fees and costs.

Jack B. Schmetterer
United States Bankruptcy Judge

JUN 22 2006